**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAFAYETTE DIVISION**

| | |
|---|---|
| **CHRISTOPHER LIROY TYSON** | **CASE NO. 6:19-CV-00726** |
| **VERSUS** | **JUDGE ROBERT R. SUMMERHAYS** |
| **PHILIP MATTHEW DASPIT, ET AL.** | **MAGISTRATE JUDGE WHITEHURST** |

**RULING ON OBJECTIONS**

Before the Court is a Motion to Dismiss for Failure to State a Claim [ECF No. 35], filed by Defendants Lafayette City-Parish Consolidated Government ("LCG") and Officer Philip Daspit in his individual capacity as a police officer for LCG.[1] Pursuant to the motion, Defendants seek dismissal of all claims brought by Plaintiff Christopher Tyson, except for his claim of excessive force, asserting Plaintiff has failed to state a claim upon which relief may be granted, as the subject claims are "barred by the *Heck* doctrine." [ECF No. 35 at 1; *see also* ECF No. 35-1 at 36]. Alternatively, Officer Daspit asserts he is qualifiedly immune from the claims at issue. [ECF No. 35 at 2]. The Magistrate Judge issued a Report and Recommendation ("R&R") recommending Defendants' motion be granted in part and denied in part. [ECF No. 45]. Plaintiff has filed objections to the R&R [ECF No. 48], and Defendants have responded. [ECF No. 51]. For the reasons set forth below, the Court ADOPTS IN PART the Report and Recommendation.

---

[1] While Defendants state their motion is brought by LCG and Officer Daspit in his individual and official capacities, Plaintiff has sued Officer Daspit only in his individual capacity. [ECF No. 31 at 3].

# I.
## BACKGROUND[2]

On June 17, 2018, Tyson went out with friends to a bar and consumed alcoholic beverages. [ECF No. 31 at 4]. After returning home, Tyson had what he believes was a panic attack.[3] *Id.* at 4-5. Thereafter, Tyson was found unresponsive and his girlfriend called 911. *Id.* at 5. Tyson was taken to the hospital by ambulance. *Id.* At the hospital, the nurse assigned to Tyson was "sarcastic" and "curt," leading to a verbal argument between the nurse, Tyson, Tyson's mother and his girlfriend. *Id.* Tyson got up from the bed and "struck the wall in frustration." *Id.* The nurse ordered Tyson to get back in the bed. Tyson's girlfriend was then "physically removed" from the room by a different nurse, and "shouting was heard in the hall outside the examination room." *Id.* Three hospital security guards then entered Tyson's room and placed him prone on the floor "restraining his hands and feet." *Id.* at 6. Due to Tyson's resistance, they were only able to place one handcuff on him. *Id.* The male nurse then "jumped on Chris Tyson apparently to assist in his restraint." *Id.* Shortly thereafter, Officer Daspit and two other LPD officers entered the room. *Id.* While Plaintiff was being restrained by the two security guards, Officer Daspit "started kicking Chris rapidly several times on the face, arms and ribs." *Id.* Officer Daspit then loudly yelled, "Stop trying to get my knife out of my boot!" *Id.* This statement was "a ridiculous falsehood," as at no time did Tyson attempt to resist Officer Daspit or attempt to take his knife. *Id.* Tyson contends he was "framed" by Daspit in order to "instigat[e] a probation revocation hold and prolong[] [his] incarceration." *Id.* at 7.

---

[2] Because this matter is before the Court on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court must "assume that the facts the complaint alleges are true and view those facts in the light most favorable to the plaintiff." *Sewell v. Monroe City Sch. Bd.*, --- F.3d ---, 18-31086, 2020 WL 5416305, at *2 (5th Cir. Sept. 10, 2020).

[3] Tyson takes medication for bi-polar disorder and has a history of concussions incurred while playing high school football. [ECF No. 31 at 3-4.

Officer Daspit arrested Tyson and booked him into the Lafayette Parish Correctional Center on the following charges: Disarming of a Police Officer through Use of Force or Threat of Force (a felony); two counts of Public Intimidation: Use of Violence (felony offenses)[4]; Simple Criminal Damage to Property (a misdemeanor)[5]; Disturbing the Peace (misdemeanor); and Resisting an Officer (misdemeanor). *Id.* at 7. The same day, Daspit filed a probable cause affidavit, falsely attesting that Tyson fought him during the arrest and that Tyson grabbed Daspit's "boot knife with his left hand partially ripping it off." *Id.*; ECF No. 31-2; *see also* ECF No. 41 at 14. Daspit knowingly and intentionally filed the probable cause affidavit containing false statements in order to "mislead the reviewing magistrate on the basis for a finding of probable cause for the felony offenses. . . ." ECF No. 31 at 7. The following day, the Commissioner conducted a probable cause review and set bail for the felonies. [ECF No. 31 at 9; *see also* ECF No. 31-3]. Due to the felony charges, "a probation revocation hold was placed on [Tyson] and, as a result, he was incarcerated approximately 73 days." [ECF No. 31 at 9 (citation omitted); *see also* ECF No. 31-5]. Tyson admits there was probable cause to arrest him for the misdemeanor offenses of Simple Criminal Damage to Property "and perhaps Disturbing the Peace," which he contends occurred prior to Daspit's arrival on the scene. [ECF No. 31 at 7]. However, Tyson asserts probable cause did not exist for the felony charges, as they were based solely upon evidence fabricated by Daspit.

On August 9, 2018, the District Attorney's Office filed a Bill of Information charging Tyson with one felony count of Disarming a Police Officer, and three misdemeanor counts of Disturbing the Peace by Fistic Encounter, Simple Criminal Damage to Property Less than $1,000,

---

[4] According to Daspit, the basis for this charge was that "[a]fter being restrained the defendant began stating that he would take the officers [sic] job due to him being related to the Mayor of Scott. . . . Upon arrival at LPCC he then threatened to take the present supervisor's job." [ECF No. 31-2].

[5] This charge was brought due to Tyson punching the hospital wall, which caused damage to the sheetrock. [ECF No. 31-6].

and Resisting Arrest. *Id.* at 9. The District Attorney declined or refused the two counts of Public Intimidation. *Id.*; *see also* ECF No. 31-7. A probation revocation hearing was held on August 29, 2018. [ECF No. 31-8]. At the hearing, Tyson's counsel "pointed out to a prosecutor that an essential element of the felony charge of disarming a police officer . . . is that the weapon being taken must be issued to the officer by his agency, and the Lafayette Police Department does not issue knives." [ECF No. 31 at 9-10]. The prosecution acknowledged it did not have a valid felony charge lodged against Tyson. *Id.* at 10. The state court then revoked Tyson's probation for the misdemeanor offenses, "which normally would **not** have resulted in a sentence of such prolonged confinement, and sentenced him to [60] days confinement with credit for time served."[6] *Id.*; *see also* ECF No. 31-8. Tyson was released from confinement the same day after posting a commercial bail bond. [ECF No. 31 at 10; ECF No. 31-9]. All told, Tyson spent 73 days in jail. On September 13, 2018, the District Attorney's office dismissed the sole felony charge (Disarming a Police Officer) after "realizing that the knife that Officer Daspit falsely alleged [Plaintiff] tried to take was not an issued item." [ECF No. 31 at 10; *see also* ECF No. 31-10]. On September 12, 2019, Tyson pleaded guilty to Disturbing the Peace and Simple Criminal Damage to Property Less than $1,000, and the State dismissed the misdemeanor charge of Resisting Arrest. [ECF No. 7-1]. Tyson was sentenced to 73 days in jail on each count, with credit for time served. *Id.*

On June 10, 2019, Tyson filed this suit, asserting the following claims for relief against Officer Daspit pursuant to 42 U.S.C. § 1983:

> Claim 1: Unlawful Seizure and Confinement for Felony Offenses Based Upon False Statements and Fabricated Evidence in violation of the Due Process Clause of the Fourteenth Amendment
>
> Claim 2: Excessive Force in violation of the Fourth and Fourteenth Amendments

---

[6] Plaintiff states he was sentenced to 63 days in jail; however, the Order states Plaintiff was sentenced to 60 days, with credit for time served. [ECF No. 31-8].

>Claim 3: Unlawful Initiation of Legal Process and Confinement Based Upon False or Fabricated Evidence in violation of the Due Process Clause of the Fourteenth Amendment

Tyson additionally asserts the following state law claims against all Defendants:

>Claim 4: Malicious Prosecution

>Claim 5: False Arrest and Imprisonment

>Claim 6: Due Process in violation of the Article I, Section 2 of the Louisiana Constitution.

[ECF No. 1, *as amended by* ECF No. 31]. Thereafter, Defendants moved to dismiss all claims except for Claim 2 (excessive force), arguing the subject claims fail to state claims upon which relief may be granted, as they are barred by the *Heck* doctrine. Alternatively, Officer Daspit asserted he is qualifiedly immune from the subject claims. The motion was referred to the Magistrate Judge for R&R.

The Magistrate Judge found that the analysis under Rule 12(b)(6) "resolves the Plaintiff's federal § 1983 claims for false arrest, false imprisonment and malicious prosecution," and therefore declined to "consider Defendants' arguments as to the § 1983 claims under the *Heck* doctrine and Qualified Immunity." [ECF No. 45 at 6]. She then found Tyson's Fourteenth Amendment Substantive Due Process Claims (*i.e.*, Claims 1 and 3) should be dismissed because the claims should have been brought under the Fourth Amendment, as the claims were not "viable Fourteenth Amendment claim[s]." *Id.* at 15. With regard to Tyson's state law due process claim (Claim 6), the Magistrate Judge found that "just as Plaintiff's claims under the Fourteenth Amendment," the state law claims "fail to allege any conduct by Defendants that was so egregious that it may be said to shock the conscience."[7] *Id.* at 22. Accordingly, the Magistrate Judge recommended dismissal of Tyson's substantive due process claim asserted under Article I, Section

---

[7] The Court notes the Magistrate Judge did not reach the issue of whether the alleged conduct "shocked the conscience" with regard to Tyson's Fourteenth Amendment claims.

Page 5 of 16

2 of the Louisiana Constitution. The Magistrate Judge further recommended that the motion be denied with regard to Tyson's § 1983 claim of excessive force and his state law claim of malicious prosecution.

Tyson has now filed objections to the Magistrate Judge's recommendation that his due process claims (Claims 1, 3 and 6) be dismissed. [ECF No. 48]. Defendants have responded and ask that the Court adopt the Report and Recommendation. [ECF No. 51]. The matter is now ripe for ruling.

## II.
## APPLICABLE LAW

### A.  Standard of Review

District judges may refer dispositive matters to a magistrate judge for issuance of "proposed findings of fact and recommendations for . . . disposition." 28 U.S.C. § 636(b)(1)(B); *see also* Fed. R. Civ. P. 72(b)(1). The statute provides for the filing of written objections to proposed findings and recommendations and for a de novo determination of matters "to which objection is made."[8] 28 U.S.C. § 636(1); *see also* Fed. R. Civ. P. 72(b)(2), (3). If objections are filed, the district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(1); *see also* Fed. R. Civ. P. 72(b)(3) (The district judge may additionally "receive further evidence; or return the matter to the magistrate judge with instructions."). If no objections are filed, the district court is not required to review the magistrate judge's report, nor is it prohibited from doing so. *Thomas v. Arn*, 474 U.S. 140, 153-54 (1985).

---

[8] "The filing of objections to a magistrate's report enables the district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute." *Thomas v. Arn*, 474 U.S. 140, 147 (1985).

"A motion to dismiss for failure to state a claim concerns the 'formal sufficiency of the statement of the claim for relief,' not a lawsuit's merits." *Sewell v. Monroe City Sch. Bd.*, -- F.3d --, 18-31086, 2020 WL 5416305, at *2 (5th Cir. Sept. 10, 2020) (quoting *Doe v. Hillsboro Indep. Sch. Dist.*, 81 F.3d 1395, 1401 (5th Cir. 1996)). To prevail on such a motion, a defendant "must show that, even in the plaintiff's best-case scenario, the complaint does not state a plausible case for relief."[9] *Id.* at 1. When reviewing a motion to dismiss, courts must "assume that the facts the complaint alleges are true and view those facts in the light most favorable to the plaintiff."[10] *Id.* The motion must be denied if the complaint "contain[s] sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Id.* (alterations in original; internal quotation marks omitted) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Although this framework is one-sided, the issue 'is not whether a plaintiff will ultimately prevail but whether he is entitled to offer evidence to support his claims.' The other side will have its say later." *Id.* (quoting *Doe* at 1401).

---

[9] When considering a Rule 12(b)(6) motion, a district court generally "must limit itself to the contents of the pleadings, including attachments thereto." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). However, "[t]he court may also consider documents attached to either a motion to dismiss or an opposition to that motion when the documents are referred to in the pleadings and are central to a plaintiff's claims." *Brand Coupon Network, L.L.C. v. Catalina Marketing Corp.*, 748 F.3d 631, 635 (5th Cir. 2014). Further, "the court may permissibly refer to matters of public record." *Cinel v. Connick*, 15 F.3d 1338, 1343, n. 6 (5th Cir. 1994); *see also Test Masters Educational Services, Inc. v. Singh*, 428 F.3d 559, 570, n. 2 (5th Cir. 2005). This includes "the record of the underlying litigation." *Cal Dive Intern., Inc. v. Schmidt*, 639 Fed.Appx. 214, 216 n. 1 (citing *Norris v. Hearst Trust*, 500 F.3d 454, 461, n. 9 (5th Cir. 2007)).

[10] Conclusory allegations and unwarranted deductions are not accepted as true, and courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Rather, "[f]actual allegations must be enough to raise a right to relief above the speculative level," and the pleading must contain something more than a statement of facts which merely creates a suspicion of a legally cognizable right of action. *Twombly* at 555.

## B.     Substantive Due Process

Tyson's claims for unlawful seizure and confinement (Claim 1) and unlawful initiation of legal process and confinement (Claim 3) arise under the Fourteenth Amendment to the United States Constitution. Claim 6 asserts a violation of Tyson's due process rights under Article I, Sec. 2 of the Louisiana Constitution. These claims will be analyzed together. *See e.g. Progressive Sec. Ins. Co. v. Foster*, 97-2985, p. 22 (La. 4/23/98); 711 So.2d 675, 688 ("[O]ur due process guarantee in La. Const. Art. I, § 2 does not vary from the Due Process Clause of the Fourteenth Amendment to the United States Constitution.").

The Fourteenth Amendment provides in pertinent part, "No State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1. "Prohibition against improper use of the 'formal restraints imposed by the criminal process' lies at the heart of the liberty interests protected by the Fourteenth Amendment due process clause." *Jones v. City of Jackson*, 203 F.3d 875, 880-81 (5th Cir. 2000) (quoting *Board of Regents v. Roth*, 408 U.S. 564, 575 (1972)). It is well-settled that there is no "substantive right under the Due Process Clause of the Fourteenth Amendment to be free from criminal prosecution except upon probable cause." *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *see also Castellano v. Fragozo*, 352 F.3d 939, 953 (5th Cir. 2003) ("[C]ausing charges to be filed without probable cause will not without more violate the Constitution."). However, "[i]t is equally apparent that additional government acts that may attend the initiation of a criminal charge could give rise to claims of constitutional deprivation." *Castellano* at 953. "The initiation of criminal charges without probable cause may set in force events that run afoul of explicit constitutional protection—the Fourth Amendment if the accused is seized and arrested, for example, *or other constitutionally secured rights if a case is further pursued*." *Id.* (emphasis added). For example, "a state's manufacturing

of evidence and knowing use of that evidence along with perjured testimony to obtain a wrongful conviction deprives a defendant of his long recognized right to a fair trial secured by the Due Process Clause . . . ." *Id.* at 942. Indeed, the Fifth Circuit has recently held that there is a "due process right not to have police deliberately fabricate evidence and use it to frame and bring false charges against a person." *Cole v. Carson*, 802 F.3d 752, 771 (5th Cir. 2015) ("*Cole I*"), *cert. granted, judgment vacated sub nom. Hunter v. Cole*, 137 S. Ct. 497 (2016) *and opinion reinstated in part*, 935 F.3d 444 (5th Cir. 2018) (*en banc*) (quoting *Albright v. Oliver*, 510 U.S. 266, 268 (1994) (plurality)).[11] Under such circumstances, and where "the Fourth Amendment is unavailing, there may be a due process violation."[12] *Cole I* at 773; *see also Morgan v. Chapman*, 969 F.3d 238, 250 (5th Cir. 2020) (finding that in light of the holding of *Cole I*, it would not be futile to permit plaintiff to amend his complaint to allege a due process claim and remanding to the district court to consider that claim). A victim of intentional fabrication of evidence by law enforcement

---

[11] Although *Cole I* has a tortured procedural history, it remains binding precedent. *Morgan v. Chapman*, 969 F.3d 238, 250 (5th Cir. 2020). As noted in *Morgan*:

> *Cole I* was vacated by the Supreme Court in *Hunter v. Cole*, --- U.S. ---, 137 S. Ct. 497, 196 L.Ed.2d 397 (2016). On remand from the Supreme Court, the panel in *Cole II* reinstated the portion of the opinion including its due process fabricated evidence theory. *See Cole v. Carson*, 905 F.3d 334, 347 (5th Cir. 2018) ("*Cole II*"), *reh'g en banc granted*, 915 F.3d 378 (5th Cir. 2019), *on reh'g en banc*, 935 F.3d 444 (5th Cir. 2019), *as revised* (Aug. 21, 2019). *Cole II* was vacated when this court granted rehearing en banc, 915 F.3d 378 (5th Cir. 2019), but the en banc court held "as in *Cole I* with respect to the Coles' three fabrication-of-evidence claims."

*Id.* at n.7.

[12] In *Cole I*, officers allegedly made false statements resulting in Cole being charged with the felony offense of aggravated assault on a public servant, a charge which was subsequently dismissed. *Cole I*, 802 F.3d at 763-64. The false statements allegedly were made to conceal and justify the officers' use of excessive force. *Id.* at 772. Cole was also charged with unlawful carrying of a weapon for which probable cause existed. *Id.* at 765. Because probable cause existed on one of the charges for which Cole was arrested, the Fourth Amendment was unavailing. *Id.* at 764 ("[T]o make out a Fourth Amendment claim under either a 'false arrest' or 'illegal detention' theory, the relevant actors must not be aware of facts constituting probable cause to arrest or detain the person for *any* crime.")

officers is denied due process whether he is convicted or acquitted, and even where the false charges do not "survive to the trial stage." *Cole I* at 768.

To state a claim for a violation of substantive due process rights under the Fourteenth Amendment, the behavior of the government officer must be sufficiently egregious such that it may be said to "shock the conscience." *Id.* at 772.

> Conduct sufficient to shock the conscience for substantive due process purposes has been described in several different ways. It has been described as conduct that "violates the decencies of civilized conduct"; conduct that is "so brutal and offensive that it [does] not comport with traditional ideas of fair play and decency"; conduct that "interferes with rights implicit in the concept of ordered liberty"; and conduct that "is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience."

*Doe ex rel. Magee v. Covington Cty. Sch. Dist. ex rel. Keys*, 675 F.3d 849, 867 (5th Cir.2012) (quoting *Cty. of Sacramento v. Lewis,* 523 U.S. 833, 842 (1998)). "Deliberate framing of a person by the state offends the most strongly held values of our nation," and therefore is shocking to the conscience. *Cole I* at 772-73.

### III.
#### ANALYSIS

**A.** **Whether Plaintiff has sufficiently stated a claim for violation of his substantive due process rights**

Tyson alleges Officer Daspit filed a probable cause affidavit that deliberately included fabricated evidence of felonious conduct in order to cause a probation revocation hold to issue and prolong Tyson's incarceration. Tyson further alleges that this unlawful act led to the District Attorney issuing a Bill of Information charging Tyson with a felony count of Disarming a Police Officer. Tyson was ultimately incarcerated for 73 days before being permitted to bond out. According to Tyson, but for the false felony charges brought about by Officer's Daspit's fabrications, Tyson would have been released much earlier.

As the Fifth Circuit explained in *Cole I*:

Being framed and falsely charged brings inevitable damage to the person's reputation, especially where, as here, the crime is a felony involving the threat of violence.[13] Alongside the reputational damage, it requires the person framed to mount a defense, and places him in the power of a court of law, where he may be required to appear.

*Cole I*, 802 F.3d at 772. Where law enforcement officers "deliberately fabricate evidence and use it to frame and bring false charges against a person" and "the Fourth Amendment is unavailing, there may be a due process violation."[14] *Cole I* at 771, 773. Here, Tyson alleges Officer Daspit fabricated evidence in order to bring felony charges against him and prolong his detention. The Fourth Amendment is unavailing because Tyson admits probable cause existed to arrest him on the misdemeanor charges of Simple Criminal Damage to Property and Disturbing the Peace. Accordingly, the Court finds the allegations of the First Amended Complaint, when viewed in Tyson's favor, are sufficient to state a violation of Tyson's Fourteenth Amendment substantive due process rights. For these same reasons, Tyson has sufficiently stated a claim for violation of his substantive due process rights under Article I, Section 2 of the Louisiana Constitution. *Progressive*, 711 So.2d at 688.

**B.     Whether Plaintiff's due process claims are barred by *Heck v. Humphrey***

Defendants contend Tyson's substantive due process claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), because such claims "directly implicate the sentence imposed by the state district court judge on both the probation revocation and the misdemeanor charges for

---

[13] Disarming of a peace officer requires the "use of force or threat of force." La. R.S. 14:34.6.

[14] Defendants ignore the holding of *Cole I* in their briefing. Instead, they insist *Albright* requires that claims "based on alleged pretrial deprivations of [Plaintiff's] constitutional rights" must be brought under the Fourth Amendment. [ECF No. 51 at 5]. As noted in *Cole I*, the Fifth Circuit has previously held that the "portion of *Albright* that suggests that the Fourth Amendment applies to pretrial deprivations of liberty did not receive the support of a majority of the Justices." *Id.* at 766 (quoting *Brothers v. Klevenhagen*, 28 F.3d 452, 456 n.3 (5th Cir. 1994)).

which he pled guilty, and directly call[] into question the validity of his standing conviction and sentences." [ECF No. 51 at 4 (emphasis omitted)]. Tyson contends *Heck* does not bar his claims because the conduct resulting in the misdemeanor offenses for which he was convicted occurred before the arrival of Officer Daspit – in other words, Officer Daspit's false charges are not "irretrievably connected" to Tyson's misdemeanor convictions.

It is well-settled that under *Heck* a plaintiff who has been convicted of a crime cannot recover damages for an alleged violation of his constitutional rights if the alleged violation arises out of the same facts attendant to a charge for which he was convicted, unless he proves "that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck* at 486–87; *see also Ballard v. Burton*, 444 F.3d 391, 396 (5th Cir. 2006). When confronted with a § 1983 claim, *Heck* requires the district court to first consider "whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated."[15] *Ballard* at 396 (quoting *Jackson v. Vannoy*, 49 F.3d 175, 177 (5th Cir. 1995)). However, "if the district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed in the absence of some other bar to the suit."[16] *Smith v. Hood*, 900 F.3d 180, 185 (5th Cir.2018)

---

[15] This limitation is commonly referred to as "the favorable termination rule." *Ballard* at 396; *Johnson v. Thibodaux City*, 887 F.3d 726, 732 (5th Cir. 2018).

[16] "Determining whether a particular claim is barred by Heck is 'analytical and fact-intensive' and requires the court to consider the specifics of the individual claim." *Smith v. Hood*, 900 F.3d 180, 185 (5th Cir.2018) (quoting *Bush v. Strain*, 513 F.3d 492, 497 (5th Cir. 2008)). District courts must assess whether a claim is temporally and conceptually distinct from the related conviction and sentence, whether the claims are

(quoting *Heck* at 487); *see also Muhammad v. Close*, 540 U.S. 749, 751 (2004) (*Heck* is not implicated by a "challenge that threatens no consequence" to the underlying conviction).

In this matter, Tyson was convicted of two misdemeanor offenses: Disturbing the Peace by Fistic Encounter and Simple Criminal Damage to Property Less than $1,000. For Tyson to prevail on his claim that Officer Daspit violated his substantive due process rights, he must prove, *inter alia*, that Daspit deliberately fabricated evidence in order to bring false charges against Tyson, that Daspit's actions were shocking to the conscience, and that the Fourth Amendment is unavailing. *Cole I* at 771. Were such findings made they would not call into question the validity of Tyson's conviction for Simple Criminal Damage to Property Less than $1,000, as they would have no bearing on Tyson's underlying conviction on that charge. "Simple criminal damage to property is the intentional damaging of any property of another, without the consent of the owner, and . . . by any means other than fire or explosion." La. R.S. § 14:56(A)(1). A finding that Daspit falsely attested that Tyson attempted to take Daspit's knife or resisted arrest would not invalidate Tyson's conviction or sentence for Simple Criminal Damage to Property, as that charge was based upon Tyson punching the hospital wall prior to Daspit's arrival at the scene.

However, such findings could potentially call into question Tyson's conviction and sentence for Disturbing the Peace by Fistic Encounter. "Disturbing the peace is the doing of . . . the following in such manner as would foreseeably disturb or alarm the public: . . . Engaging in a fistic encounter. . . ." La. R.S. 14:103(A)(1). While Tyson contends this conviction arose out of his interactions with the hospital security guards prior to Daspit's arrival at the scene, the documents attached to the Complaint could be interpreted as charging Tyson with conduct

---

necessarily inconsistent with the conviction, or whether the claims can coexist with the conviction or sentence without calling it into question. *Id.*

occurring during his arrest by Daspit. [ECF No. 31-2; ECF No. 31-6]. If this conviction was based on Tyson's interaction with Daspit, a finding that Daspit falsely attested that Tyson resisted arrest could negate the charge of Disturbing the Peace by Fistic Encounter, as engaging in a "fistic encounter" is a form of resistance. *See* La. R.S. 14:108. The pleadings and attachments before the Court do not set forth the basis for Tyson's conviction for Disturbing the Peace. Accordingly, the Court cannot determine, as a matter of law, whether a finding that Officer Daspit deliberately falsified evidence would imply the invalidity of Tysons's conviction for Disturbing the Peace. For these same reasons, the Court cannot determine on this record whether a finding that Officer Daspit deliberately falsified evidence would undermine Tyson's conviction for violating the terms of probation, because neither the Complaint nor the documents attached thereto identify the violations for which Tyson's probation was revoked, nor the facts supporting the conviction.[17] For all of these reasons, the Court finds Defendants have not shown that Plaintiff's claims for violations of his due process rights are barred by *Heck*.

**C.    Whether Officer Daspit is entitled to qualified immunity**

Finally, Defendants assert Officer Daspit is entitled to qualified immunity, because Tyson admits there was probable cause to arrest him for the misdemeanor counts. [ECF No. 51 at 9]. This argument has no bearing on the matter before the Court. *See e.g. Cole I* at 772-73 (probable cause does not forestall a plaintiff's options under the Fourteenth Amendment). When examining whether qualified immunity bars a claim, courts must ask whether the plaintiff has alleged the violation of a clearly established constitutional right, and whether the defendant's conduct was objectively reasonable in light of clearly established law at the time of the incident. *See e.g. Siegert v. Gilley*, 500 U.S. 226, 231 (1991); *Jones v. City of Jackson*, 203 F.3d 875, 879 (5th Cir. 2000).

---

[17] *Heck* applies to proceedings that call into question the fact or duration of probation. *Jackson v. Vannoy*, 49 F.3d 175, 177 (5th Cir. 1995); *Cotton v. Tex. Dep't Criminal Justice*, 35 F.3d 560, 560 (5th Cir.1994).

As set forth above, Tyson has alleged the violation of a clearly established constitutional right – the Fourteenth Amendment's guarantee of due process – and thus has passed the first hurdle. As to the second, "[by] 2010, no 'reasonable law enforcement officer would have thought it permissible to frame somebody for a crime he or she did not commit.'" *Cole I* at 773 (quoting *Limone v. Condon*, 372 F.3d 39, 50 (1st Cir. 2004)).

> To hold that police officers, having lawfully arrested a suspect, are then free to fabricate false [evidence] at will, would make a mockery of the notion that Americans enjoy the protection of due process of the law and fundamental justice. The wrongfulness of charging someone on the basis of deliberately fabricated evidence is sufficiently obvious, that . . . a reasonable officer in [the defendant's] shoes would have known his conduct violated the Constitution. No reasonably competent police officer could believe otherwise.

*Id.* at 773-74 (internal quotation marks and footnotes omitted). Under Tyson's version of events, Daspit falsely claimed in a probable cause affidavit that Tyson attempted to take his knife in order to have false charges brought against Tyson and prolong his detention. The allegations set forth in the Complaint are sufficient to show that the violation of Tyson's constitutional right to due process was objectively unreasonable given clearly established precedent at the time of his arrest.

## IV.
### CONCLUSION

For the reasons set forth above, the Court DECLINES to adopt that portion of the R&R recommending dismissal of Tyson's substantive due process claims asserted under the Fourteenth Amendment of the United States Constitution and Article I, Section 2 of the Louisiana Constitution (Claims 1, 3 and 6), and the Court ADOPTS that portion of the R&R recommending denial of Defendants' motion insofar as it seeks dismissal of Tyson's state law claim of malicious prosecution.[18] Stated more simply, Defendant's Motion to Dismiss [ECF No. 35] is DENIED.

---

[18] The Court notes that although the Magistrate Judge acknowledged Defendants sought dismissal of Plaintiff's state law claim of False Arrest and Imprisonment (Claim 5), she did not address that claim in the R&R. [ECF No. 45 at 5]. However, Defendants did not file an objection to the R&R, nor did they address

THUS DONE in Chambers on this 1st day of October, 2020.

<em>[signature]</em><br>
ROBERT R. SUMMERHAYS<br>
UNITED STATES DISTRICT JUDGE

---

that aspect of their underlying motion in their response to Plaintiff's Objections. Accordingly, the Court declines to address this claim. *See* Fed. R. Civ. P. 72(b)(2); *Thomas v. Arn*, 474 U.S. 140, 153-54 (1985).